# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| **INTERNATIONAL PAPER COMPANY,** | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) Civ. Action No. _____ ) |
| **TWIN RIVERS LAND & TIMBER, INC.; and TWIN RIVERS COMPANY, INC.,** | ) ) ) **JURY TRIAL DEMANDED** ) |
| **Defendants.** | ) |

## VERIFIED COMPLAINT

INTERNATIONAL PAPER COMPANY, Plaintiff herein, now respectfully files its <u>Verified Complaint</u>, showing as follows:

## INTRODUCTORY STATEMENT

Twin Rivers Land & Timber, Inc. and/or Twin Rivers Company, Inc. is currently holding $671,880.80 worth of hardwood pulpwood hostage at Twin Rivers' facility in Cordele, even though International Paper paid for that pulpwood and discharged all of its contractual duties to secure its release. The genesis of the conflict is apparently the rising costs that have affected all American businesses over the past year: seemingly, the Twin Rivers entities are unhappy with the contractual bargain they entered with International Paper, and have now sought to add a new and wholly uncontemplated "storage fee," totaling over $35,000 per <u>week</u>. Beginning in September 2022, Twin Rivers simply said it would not release International Paper's <u>own wood pulp</u> to International Paper and barred International Paper from the premises, even though International Paper had already paid. Then, Twin Rivers said that storage fees were still accruing – even though they

1

were only accruing because Twin Rivers has prevented International Paper from collecting its own goods.

International Paper now brings this action seeking both legal and equitable remedies.

## PARTIES AND JURISDICTION

1. International Paper Company is a New York corporation with a principal place of doing business in Tennessee.  It submits to jurisdiction and venue in this Court.

2. Twin Rivers Company, Inc. is a Georgia corporation with a principal place of doing business in Georgia and a principal office address of 904 Ball Street, Perry, GA, 31069, USA.  It can be served via its registered agent, CT Corporation System, at 289 South Culver Street, Lawrenceville, GA, 30046.  Negotiations regarding this contract were sent from Ashley W. Crosby under electronic letterhead bearing the name of Twin Rivers Company, Inc.

3. Twin Rivers Land & Timber, Inc. is a Georgia corporation with a principal place of doing business in Georgia and a principal office address of 904 Ball Street, Perry, GA, 31069, USA.  It can be served via its registered agent, Ashley W. Crosby, at 904 Ball Street, Perry GA 31069.  ("Twin Rivers").  Twin Rivers is the company that entered the relevant contracts with International Paper.

4. Personal jurisdiction is proper over Twin Rivers and Twin Rivers Company, Inc. because they are both Georgia companies with a principal place of doing business in Georgia and therefore subject to general jurisdiction under Georgia and federal law and under the Due Process clause.  Additionally, the acts, omissions, and failures alleged in this Verified Complaint occurred in the State of Georgia, so specific jurisdiction would be proper over those entities under Georgia and federal law and under the Due Process Clause.  Further, the property at issue in this Verified Complaint is located within the State of Georgia.

5. Venue is proper in this Court and Division because this agreement was for the purchase, storage, and chipping of hardwood pulpwood at Defendant's facility in Cordele, Georgia, located within Crisp County. A substantial portion of the events or omissions giving rise to the claim occurred in Crisp County, and a substantial part of the property that is the subject of the action is situated in Crisp County.

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332. As pleaded herein, the amount in controversy is no less than $735,889, which includes all payments for wood that was either undelivered or properly rejected, incremental fuel adjustments paid to Twin Rivers and additional freight costs incurred for out-of-spec wood received. Complete diversity exists between the parties. Both Twin Rivers entities are Georgia corporations with principal places of doing business in Georgia. International Paper is a New York corporation with a principal place of doing business in Tennessee. No entity is an LLC or otherwise has any members whose citizenship must be pleaded.

## FACTS COMMON TO ALL COUNTS

7. International Paper and Twin Rivers entered a Master Wood Purchase and Service Agreement ("Master Agreement") in May 2020, a copy of which is attached as **Exhibit 1**.

8. In general, the Master Agreement was entered so that International Paper could utilize the services of Twin Rivers in delivering, cutting, converting, and/or transporting pulpwood, saw timber, in-wood chips, residual chips, chip mill chips, fiber fuel, piling, and/or other forest products. Master Agreement at 1.

9. The original term of the contract under the Master Agreement lasted until May 31, 2023.

10. The price term in the Master Agreement references future purchase orders and contemplates that the prices listed in those purchase orders shall govern. Master Agreement ¶ 4. Pursuant

to the Master Agreement, when Twin Rivers delivered wood, that wood would be scaled and weighed pursuant to specific criteria, and the weight generated by those procedures would be the compensated weight pursuant to the price in the purchase order.  Master Agreement ¶¶ 6, 8.

11. The Master Agreement also provides that if there is a suit to enforce or interpret any provision of the Master Agreement, the prevailing party will recover reasonable attorney's fees, court costs and litigation expenses.  Master Agreement ¶ 16.

12. The governing law of the Master Agreement is the law of the state where the Wood is harvested.  Master Agreement ¶ 35.

13. All Wood at issue in this case was harvested in the State of Georgia.

14. The Master Agreement also contains several exhibits, which are made part of that Master Agreement.

15. Exhibit C to the Master Agreement is clear that terms of purchase orders cannot be varied. Master Agreement, Exhibit C ¶ 4.

16. The parties also entered a Wood Purchase and Chipping Addendum to the Master Agreement ("Wood Purchase Addendum") on September 17, 2021.  That document is attached as **Exhibit 2** and its caption is shown herein:

**MASTER WOOD PURCHASE AND SERVICE AGREEMENT**
**WOOD PURCHASE AND CHIPPING ADDENDUM**

17. That Wood Purchase Addendum explicitly noted that it governed "the purchase, **storage** and chipping of hardwood pulpwood from and at Seller's Cordele, Georgia facility only under the Agreement."  Wood Purchase Addendum ¶ 2.  A screenshot, with highlighting supplied, is included below:

> 2. **Purchase and Storage.** The parties intend this Addendum to govern the purchase, storage and chipping of hardwood pulpwood from and at Seller's Cordele, Georgia facility only under the Agreement.

18. The Wood Purchase Addendum explicitly provided a price based on hardwood volume and unit price per ton, and which did not include any storage fees.  Wood Purchase Addendum ¶¶ 3, 7, 9.  Screenshots of those provisions are included herein:

> 3. **Volume.** Seller will sell and Buyer will purchase hardwood chips ("Wood") during the Term of this Addendum to be delivered by Seller to Buyer upon written wood order by Buyer.  A ton shall be 2,000 pounds of Wood having natural moisture content.  Weight will be determined as volume weighed in rail cars at Buyer's facility as determined by Buyer. Seller to be paid as defined below and the amount of payment shall be determined by the net weight of the Wood.

> 7. **Payment.** Settlement and payment to Seller shall be made on a weekly basis by Buyer, using Buyer's scale tickets as determined at Buyer's facility, which shall indicate the number of tons received and the unit price per ton as described in section 9 below.

> 9. **Pricing.**  Buyer and Seller agree that the payment for Services which includes purchasing, receiving, scaling, unloading, stacking, chipping and reloading onto rail equipment or trucks, will be at a price of Fifty Two dollars and no cents ($52.00) per ton (chip equivalent) which includes the current market-based wood price when delivered to Buyer's Facility.  Any provision of the Agreement that is conflict with the provisions in this Addendum shall be superseded by the provisions in this Addendum.

19. It also provides an adjustment mechanism for pricing, which again includes no storage component.  Wood Purchase Agreement ¶ 10.  A screenshot is attached here:

> 10. **Adjustments.** Buyer and Seller recognize and agree that over the course of this Addendum the Market for Wood may increase or decline.  Buyer will adjust buying component of this addendum to reflect current market. In which event Payment to Seller will be adjusted based on the amount of the "purchase price adjustment at the scales for wood" multiplied by 1.15 (up or down).

20. The Wood Purchase Agreement initially lasted until December 31, 2021, then was later extended to March 31, 2022.

21. Pursuant to the Master Agreement and the Wood Purchase Agreement, the parties entered Purchase Order No. 15605983 (attached as **Exhibit 3**) for an unspecified volume of hardwood chips on or about October 4, 2021.  The Purchase Order was split into 18 shipments of 10,000 tons each, with delivery due no later than September 1, 2022 for the latest of all the shipments.

5

22. International Paper has satisfied all conditions precedent under the governing contracts.

23. However, despite International Paper's discharge of conditions precedent and advanced payment for wood chips, Twin Rivers has refused to provide the wood chips that International Paper purchased.

24. Twin Rivers has attempted to assess an additional "storage fee" for the wood chips that is not part of the parties' contract or agreement.

25. On information and belief, Twin Rivers has purported to assess this storage fee not because it believes such a fee is part of the agreement between the parties, but because market conditions unrelated to International Paper have rendered this arrangement less lucrative for Twin Rivers than Twin Rivers anticipated, and it is seeking an extra-contractual source of revenue from International Paper.

26. Twin Rivers has refused to provide access to its Cordele facility or to the wood chips, in addition to refusing to allow International Paper to transport those chips away from the Cordele facility, even though title has transferred to International Paper.  The time for delivery of wood chips under the Purchase Order and the contracts has passed.

27. Pursuant to the International Paper Purchase Order Terms and Conditions, for which a URL is provided in the relevant Purchase Order and which are attached hereto as **Exhibit 4**, time is of the essence for this contract unless otherwise agreed by the parties.  The parties did not agree that time was <u>not</u> of the essence here, so time remains of the essence.

> 2. <u>Acknowledgment and Shipment</u>. Seller shall acknowledge this Order immediately advising Buyer of when shipment will be made and confirming method of shipment. Unless otherwise agreed, time is of the essence and immediate shipment or commencement of service is required. Seller shall notify Buyer at once of any delay. If an order does not meet Seller's minimum requirements, Seller shall promptly notify Buyer, in which event Buyer, reserves the right to either cancel or increase order.

28. Twin Rivers' refusal of entry to International Paper is an additional violation of the Wood Purchase Agreement, which requires that Twin Rivers allow International Paper personnel into the Storage Area in which the wood chips are stored at any time. Wood Purchase Agreement ¶ 5.

29. The wood chips in question are the sort of good that can waste, degrade, or otherwise lose value quickly over time.

30. Because Twin Rivers has prevented International Paper from inspecting the subject wood chips, it is impossible to determine whether the wood chips have wasted and, if so, what percentage of the wood chips are now degraded.

31. Accordingly, because of Defendants' actions, Plaintiff may have suffered additional monetary harm that cannot be rectified solely by provision of the wood chips.

32. To date, International Paper has tendered $671,880.80 for wood chips that Defendants have prevented it from collecting or properly rejected, and has incurred additional damages such that the total damages exceed **$735,889,** a figure which includes incremental fuel adjustments paid to Twin Rivers and additional freight costs incurred for out-of-spec wood received.

33. So far, International Paper has covered its losses by purchasing other wood chips from other entities to replace those that Twin Rivers has wrongfully withheld. Such cover has typically been made at a higher price than the contractual price with Twin Rivers, and International Paper

is entitled to recovery of the discrepancy between the contract price and the cover price, in addition to all other damages associated with its cover and any consequential damages arising from Twin Rivers' actions.

34. By way of further explanation of the properly rejected wood chips described above, Twin Rivers attempted to provide some wood chips to Plaintiff.  Approximately 700 tons of those wood chips were defective.  Pursuant to the parties' agreement and to Georgia law generally, International Paper had the right to—and did—promptly reject approximately 450 tons of those goods as nonconforming and shipped them back to Twin Rivers. Approximately 250 tons were sent to another International Paper facility. <u>International Paper Purchase Order Terms and Conditions</u> ¶ 7; *see also id.* ¶ 11, 12.

35. Twin Rivers has not provided a refund of the fees International Paper paid for the rejected goods, despite the contractual agreements and Georgia law requiring it to.

36. Twin Rivers has not compensated International Paper for the freight fees International Paper incurred in shipping the seven train cars of defective pellets, despite the provision in the Purchase Order Terms & Conditions between the parties requiring it to.  <u>Purchase Order Terms & Conditions</u> ¶ 7.

7. <u>Inspection, Return and Substitution</u>. Goods and services purchased hereunder are subject to inspection and approval at Buyer's destination, and in the event that the goods are manufactured for Buyer or services are provided to Buyer, Buyer may inspect the work in progress. Buyer reserves the right to reject and refuse acceptance of goods or services which are not in full accordance with Buyer's instructions, specifications, drawings, designs, or this Order or any services that do not conform to the standard of care of a competent service provider providing similar services under similar circumstances. ==Goods not accepted will be returned at Seller's expense== and services not accepted will be timely re-performed or Seller will reimburse Buyer its costs in acquiring said adequate services from a third party, at Buyer's sole option. Payment for any goods or services shall not be deemed an acceptance thereof. All substitutions must be agreed to, in writing, prior to shipment or commencement.

## COUNT I:  BREACH OF CONTRACT (GEORGIA UCC)[1]

37. International Paper reincorporates the factual recitation in paragraphs 7-37 as if fully restated here.

38. International Paper and Twin Rivers are both merchants as defined under the Georgia UCC.

39. Pursuant to the Master Agreement and the Wood Purchase Agreement, the parties entered Purchase Order No. 15605983 for a total of 180,000 tons of hardwood chips on or about October 4, 2021.  The Purchase Order was split into 18 shipments of 10,000 tons each, with delivery due no later than September 1, 2022 for the latest of all the shipments.

40. International Paper has prepaid $671,880.80 for wood chips that have not yet been delivered or were properly rejected.

---

[1] O.C.G.A. 11-2-716 (replevin), 11-2-505 (shipment under reservation).

9

41. International Paper has performed all conditions precedent and performed all of its obligations under those contracts and purchase orders, including paying the full value due and owing under the contracts and purchase orders.

42. Upon payment for the wood chips, title to the wood chips vested in International Paper, and those wood chips now belong to International Paper.

43. The wood chips are due and owing pursuant to the terms of the parties' Purchase Order, and Twin Rivers has failed to make delivery.  This constitutes a breach.

44. Twin Rivers' delay would be unreasonable even if it were not purposefully withholding the chips and even if time were not of the essence under the terms of the Purchase Order, but both of those factors are additionally present.

45. International Paper has incurred additional costs in attempting to affect cover for the undelivered pulpwood, and almost all of the replacement goods it has secured have been purchased at a cost which exceeds the contract price of the goods due and owing from Twin Rivers.

46. These goods were due to be shipped under reservation because International Paper secured a negotiable bill of lading to its own order via the purchase orders, which contemplated provision of specific pulpwood.

47. International Paper has been monetarily harmed by Defendants' failure to allow it access to the wood chips it purchased and by Defendants' wrongful exercise of dominion over the same.

48. Twin Rivers has breached its obligations under the contracts, the Purchase Order, and the Georgia UCC by failing to refund International Paper for the approximately 450 tons of wood pulp for which it pre-paid and then rightfully rejected as non-conforming.

49. Twin Rivers has breached its obligations under the contracts, the Purchase Order, and the Georgia UCC by failing to compensate International Paper for the freight costs incurred in shipping the approximately 450 tons of non-conforming goods back to Twin Rivers and for failing to compensate International Paper for fuel adjustments.

50. International Paper's harm arising from these acts amounts to no less than $735,889 in damages already described, costs to cover, all consequential damages arising from the breach, and all other damages available under O.C.G.A. §§ 11-2-713 and 11-2-715.

## COUNT II:  BREACH OF CONTRACT

## (GEORGIA LAW) (IN THE ALTERNATIVE)

51. International Paper reincorporates the factual recitation in paragraphs 7-37 as if fully restated here.

52. The parties had a contract for the sale of goods and/or a contract to sell under the UCC. However, to the extent that the contract is construed as any sort of contract other than that for goods, or the UCC is otherwise held not to apply, International Paper brings this claim for breach of contract under non-UCC Georgia law in the alternative.

53. The parties had a contractual agreement, consisting of the Master Agreement, the Wood Purchase Agreement and addendum thereto, and the purchase order(s) for all portions of wood chips at issue.

54. Pursuant to that contract, International Paper's obligation was to allow harvesting of wood and to tender the amount of payment contemplated under the purchase orders, as calculated pursuant to the calculation mechanism in the Wood Purchase Agreement, for wood chips once Defendants produced them, stored them, and made them ready for pickup.

55. Defendants' obligations under the contract included producing wood chips and surrendering them to International Paper on demand after International Paper's payment for the same.

56. International Paper satisfied all conditions precedent under the contract documents and agreement, which was a valid and enforceable contractual agreement.

57. Defendants breached the contracts by refusing to provide the wood chips International Paper had purchased, even after International Paper paid the full amounts due and owing.

58. Defendants breached the contracts by refusing to even allow International Paper onto its premises to inspect and/or procure the goods.

59. Defendants have breached the contracts by failing to provide a refund for amounts prepaid for the approximately 450 tons of rejected wood chips, by failing to reimburse the freight fees incurred in shipping them back to Twin Rivers, and by failing to refund the fuel costs described above.

60. Defendants' breach has harmed International Paper by failing to reimburse it amounts due and owing, failing to provide required product, allowing product to waste as a result of the failure to allow pickup.  International Paper is entitled to compensation for all damages incurred therefrom, including but not limited to refund of all fees paid to Defendants related to the withheld product, the extra fees incurred to cover using more expensive wood pulp, freight fees for re-shipping the 450 tons of non-conforming wood pulp, consequential damages, and other remedies discussed by O.C.G.A. § 11-2-711, 11-2-713 and 11-2-715, whether or not those statutes apply.

**COUNT III:  MONEY HAD AND RECEIVED (IN THE ALTERNATIVE)**

61. International Paper reincorporates the factual recitation in paragraphs 7-37 as if fully restated here.

62. In the alternative to Count I, International Paper shows that it has tendered $671,880.80 for wood chips that it has not been provided or has properly rejected as nonconforming, even though it otherwise fulfilled all conditions precedent for receiving the wood chips.  International Paper also shows that it has tendered additional monies for freight costs and fuel costs so that the total monies possessed by Twin Rivers that should be possessed by International Paper is no less than $735,889.

63. Given that Twin Rivers refuses to provide the wood chips that International Paper already paid for and has otherwise improperly withheld money, Twin Rivers has money justly belonging to International Paper.

64. International Paper has made demand for prompt return of the wood chips or, in the alternative, repayment of the money.

65. Justice, equity, and Georgia law demand that repayment be made to International Paper in full.

## COUNT IV:  REPLEVIN AND/OR SPECIFIC PERFORMANCE

66. International Paper reincorporates the factual recitation in paragraphs 7-37 as if fully restated here.

67. Pursuant to O.C.G.A. § 11-2-716 and/or Georgia common law, International Paper is entitled to replevin and/or specific performance of the 10,264.16 tons of pulpwood chips it has purchased from Twin Rivers but that Twin Rivers has prevented it from obtaining.

68. The parties entered purchase orders for hardwood chips in October 2021.

69. International Paper has performed all conditions precedent and performed all of its obligations under those contracts and purchase orders, including paying the full value due and owing under the contracts and purchase orders.

70. International Paper advanced payment for wood chips described herein that Twin Rivers has prevented it from obtaining.

71. Upon payment for the wood chips, title to the wood chips vested in International Paper, and those wood chips now belong to International Paper.

72. These goods were due to be shipped under reservation because International Paper secured a negotiable bill of lading to its own order via the purchase orders, which contemplated provision of specific pulpwood.  Accordingly, replevin is appropriate.

73. Separately and independently, this is an appropriate case for specific performance because of the facts provided in paragraphs 7-37 of this Verified Complaint, because the wood chips in question are already prepared and should be available, and because allowing International Paper to collect those wood chips does not present any hardship to Twin Rivers or provide any substantial additional act on the part of Twin Rivers.

### COUNT VI:  ATTORNEYS' FEES UNDER CONTRACT AND O.C.G.A. § 13-6-11

74. International Paper reincorporates the factual recitation in paragraphs 7-37 as if fully restated here.

75. The Master Agreement provides that the prevailing party in a dispute under the Master Agreement shall recover reasonable attorneys' fees.

76. Additionally, O.C.G.A. § 13-6-11 provides that International Paper can recover reasonable attorneys' fees if Twin Rivers has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.

77. Twin Rivers has acted in bad faith, been stubbornly litigious, and has caused International Paper unnecessary expense because it has held International Paper's wood chips hostage even after

International Paper paid under the contract and otherwise discharged conditions precedent in an effort to unilaterally renegotiate a contract Twin Rivers no longer found advantageous.

78. International Paper prays for attorneys' fees under both the contractual agreement and Section 13-6-11.

**WHEREFORE**, International Paper prays for the following relief:

1) That summons issue against Defendants;

2) For a trial by jury;

3) That Defendants be required to tender all wood chips for which International Paper has paid under a theory of replevin, specific performance, or any other theory or mechanism that the Court deems just and/or equitable;

4) That Defendants be found liable for all legal damages discussed herein, including return of all fees paid by International Paper for wood chips not released or tendered, all expenses International Paper has incurred in covering because of Defendants' non-performance, all consequential damages of Defendants' non-performance, all monies International Paper paid for wood chips that were properly rejected and returned to Defendants, all freight fees associated with the return of properly rejected non-conforming goods to Defendants, and any other damages available under O.C.G.A. §§ 11-2-711, 11-2-713, and 11-2-715.

5) Pre-judgment and post-judgment interest at the commercial rate provided in O.C.G.A § 7-4-16, or, in the alternative, at the legal rate under O.C.G.A § 7-4-2; and

6) All other relief that the Court deems just.

Respectfully submitted, this 19th day of December, 2022.

**BOUHAN FALLIGANT, LLP**

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia State Bar No. 031605
LUCAS D. BRADLEY
Georgia State Bar No. 672136
*Attorneys for Plaintiff International Paper Co.*

Post Office Box 2139
Savannah, Georgia
(912) 232-7000 (voice)
(912) 233-0811 (facsimile)
tmbaiad@bouhan.com
ldbradley@bouhan.com